UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVEN RICHARD TAYLOR,

        Petitioner,

vs.                              Case No. 3:12-cv-444-J-39MCR

SECRETARY, DOC, et al.,

        Respondents.

## ORDER

**Status**

On May 5, 2015, pursuant to the mailbox rule, Petitioner filed a pro se Motion for Appointment of Conflict-Free Collateral Counsel with Request to Stay Proceedings Pending Resolution (Motion for Appointment of Counsel) (Doc. 21). The Court deferred ruling on the Motion for Appointment of Counsel; granted Petitioner's request to stay the case until the matter was resolved; directed Petitioner and his counsel, Linda McDermott, to confer and report to the Court by July 10, 2015; stayed the case; and directed the Clerk to administratively close the case. Order (Doc. 22). The Clerk administratively closed the case on May 12, 2015.

On May 12, 2015, Respondents filed a Motion to Lift Stay and Response to Motion for Substitution of Counsel (Motion to Lift Stay) (Doc. 23). On May 18, 2015, pursuant to the mailbox rule, Petitioner filed a pro se Response to Respondents' Unfounded Motion to Lift Stay, and Response to Motion for Substitution of Counsel (Response) (Doc. 24). Court appointed counsel, Linda McDermott, filed her Response (Report) to Court Relating to Petitioner's Motion for Appointment of Conflict-Free Collateral Counsel (Report) (Doc. 25) on July 6, 2015. Petitioner supplemented his Motion for Appointment of Counsel with his Proffer of Substantive Constitutional Claims Subject to Review Under Martinez v. Ryan (Proffer) (Doc. 26) on July 10, 2015.

The record shows that Petitioner filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. 2254 (Petition) (Doc. 1) and a Memorandum of Law in Support of Habeas Corpus Petition (Memorandum) (Doc. 2). Petitioner submitted a *Nunc Pro Tunc* Motion for Appointment of Counsel Pursuant to the Criminal Justice Act (Motion for Appointment of Counsel Pursuant to the CJA) (Doc. 5) pursuant to 18 U.S.C. § 3006A and 18 U.S.C. § 3599(a)(2) to the Court, seeking the appointment of Ms. McDermott. It states, in pertinent part,

> After the Florida Supreme Court issued the mandate in Mr. Taylor's case, Mr. Taylor contacted Linda McDermott. Mr. Taylor requested that Ms. McDermott represent him in his federal habeas corpus proceedings. Mr.

2

>Taylor was dissatisfied with his state court-
>appointed counsel's work.

Id. at 2.

It also states that Ms. McDermott is admitted to practice in the Middle District of Florida, and she has in the past and currently represents indigent defendants in capital collateral postconviction proceedings in both state and federal court. Id. (footnote omitted). Ms. McDermott notes that she worked for Capital Collateral Representative (CCR), and almost nine years previously, she departed CCR but continued to represent capital defendants. Id. at n.2. Additionally, she explains that she is admitted to practice law in Florida, all of the Federal courts in Florida, the United States Court of Appeals for the Eleventh Circuit, and the United States Supreme Court. Id. at 3 n.2.

The Court, on April 30, 2012, found Ms. McDermott well qualified under the applicable provision, 18 U.S.C. § 3599(c). Order (Doc. 10). In the alternative, the Court found good cause pursuant to 18 U.S.C. § 3599(d) to appoint Ms. McDermott in light of her background, knowledge, and experience. Id. at 1. The Court admitted her to the CJA panel *pro hac vice* finding her qualifications would easily satisfy the requirements for admission. Id. at 2. The Court granted the Motion for Appointment of Counsel.

Respondents filed their Response Opposing Habeas Petition (Doc. 13) on August 1, 2012. Petitioner filed his Reply to Response Opposing Habeas Petition (Doc. 18) on October 30, 2012.

At that point, the case was ripe for review. On January 7, 2014, the case was reassigned to the undersigned. The Petition was fully under consideration and review by the Court when Petitioner filed his Motion for Appointment of Counsel. Although it resulted in some disruption in the Court's review of the case, in an abundance of caution, the Court granted the motion to stay the proceedings in order to give Petitioner and his counsel an opportunity to confer and report to the Court.

Upon review, the Petitioner claims that he is entitled to qualified and conflict-free counsel. In his Motion for the Appointment of Counsel, he contends that there is a conflict of interest due to the following: (1) as registry counsel, Ms. McDermott will be barred from representing him at competency[1] and/or clemency proceedings or in a section 1983 action attempting to gain access to DNA[2] testing; and (2) as a former employee of CCR, Ms. McDermott has a long-standing personal and professional relationship with Petitioner's former state collateral counsel, Michael Reiter, and as a result, her loyalty is divided and she refuses to raise particular claims related to Reiter's representation of Petitioner.

---

[1] Petitioner also states that he may want to raise an intellectual-disability claim pursuant to Atkins v. Virginia, 536 U.S. 304 (2002) (holding the execution of a mentally retarded criminal amounts to cruel and unusual punishment prohibited by the Eighth Amendment).

[2] Deoxyribonucleic acid (DNA).

4

In Respondents' Motion to Lift Stay, Respondents contend that there is no conflict of interest in this case, and any amended petition would be untimely. Motion to Lift Stay at 1. In his Response, the focus of Petitioner's concern is that he wants counsel to raise additional grounds. Response at 4. He states that he "will gladly confer with currently assigned counsel" and is "open to a reasonable solution." Id. at 2. Petitioner suggests that Ms. McDermott has an ongoing close, personal and professional relationship with Mr. Reiter, including alleging that they are currently working together on numerous other capital cases in a "law firm" type of relationship. Id. at 3. However, Petitioner fails to reference any pending capital cases where Ms. McDermott and Mr. Reiter are acting as co-counsel or in a law firm type relationship. Petitioner claims that if the Court finds it necessary to discharge Ms. McDermott, the Court should substitute attorneys Billy Nolas and Terri Backus of the recently formed Florida Capital Habeas Unit, referencing a "<u>virtual plague</u> of incompetent capital collateral representation by Florida 'registry' counsel." Id. at 4. Finally, Petitioner asks that this Court make a sufficient inquiry into the alleged conflict of interest. Id. at 5.

In her Report, Ms. McDermott relates that Petitioner's pro se Motion for Appointment of Counsel is primarily based on two concerns: (1) "under Florida Statute 27.710 (2010), undersigned is

prohibited from representing Mr. Taylor in successive postconviction proceedings in the state courts;" and (2) "undersigned has not included argument concerning the unreliability of the DNA testing and results in Mr. Taylor's petition." Report at 2. With regard to the second issue, Ms. McDermott notes that Petitioner claims that his counsel's reluctance to raise the DNA issue pursuant to <u>Martinez v. Ryan</u>, 132 S.Ct. 1309 (2012) and <u>Trevino v. Thaler</u>, 133 S.Ct. 1911 (2013), is based on her long-standing personal and professional relationship with Mr. Reiter. <u>Id</u>.

Ms. McDermott's apprises the Court that she conferred with Petitioner telephonically on May 12, 2015, and personally, on June 10, 2015. <u>Id</u>. at 3. Of significance, she was not appointed to represent Petitioner pursuant to a state court appointment and is not governed or limited by Florida Statute 27.710(2013), concerning registry counsel. <u>Id</u>. Indeed, the record shows that she was appointed pursuant to 18 U.S.C. § 3599. Relying on <u>Gore v. Crews</u>, 720 F.3d 811 (11th Cir. 2013) (per curiam) and <u>Harbison v. Bell</u>, 556 U.S. 180, 183-84, 190 n.7 (2009), she recognizes that she, at the discretion of the district court, may appear on behalf of Petitioner in state court clemency and competency proceedings if Petitioner is unable to obtain adequate representation. Report at 3-4. Additionally, the district court may determine that it is necessary for appointed counsel to represent a petitioner in a

state court proceeding in order to properly exhaust a claim. She mentions that she has requested authorization to represent other CJA clients before the state court when necessary. Report at 4. As a result, Ms. McDermott contends that Florida Statute 27.710 (2013) is inapplicable to this situation and there is no conflict for her representation of Petitioner. Report at 4.

With respect to Petitioner's concern that Ms. McDermott has not adequately presented claims concerning DNA evidence, Ms. McDermott states that in grounds one and two of the Petition and Memorandum, the issues of the state's false and misleading presentation of DNA evidence and trial counsel's failure to adequately prepare and challenge that evidence are presented. Report at 5. After discussion with Petitioner, she advises that "[u]ndersigned has considered Mr. Taylor's suggestions and reviewed the grounds and believes that they include the information that Mr. Taylor believes is necessary to establish his claims." Id.

Of importance, Ms. McDermott, an officer of the Court, states that "she does not have nor has she ever had a 'personal' relationship with initial-review collateral counsel Michael Reiter[,]" and she underscores the fact that they "are not friends." Id. at 6. Furthermore, she notes that she was employed at the discretion of Mr. Reiter for just over two years, first for Capital Collateral Counsel for the Middle Region in 1998, departing in January, 1999, and second, for Capital Collateral Northern

Region (CCC-NR) in 2001. Id. at 6. McDermott explains that in July, 2003, the Florida Legislature de-funded CCC-NR and she formed a private law firm with attorney Martin McClain, almost exclusively providing representation to capital collateral defendants in Florida. Id.

With regard to any professional communication with Mr. Reiter for the past twelve years, Ms. McDermott states that there have been "a few phone calls related to litigation questions and fee issues." Id. Of import, Ms. McDermott states that "she has never litigated any criminal or other case with Mr. Reiter."[3] Id. at 6-7. Of further significance, she points out that in ground three of the Petition, she has relied on Martinez v. Ryan, alleging that Mr. Reiter, as initial-review collateral counsel, provided inadequate assistance which establishes cause for a procedural default. See Memorandum at 38-43.

With respect to Petitioner's concern that counsel has not adequately presented the DNA issue, Ms. McDermott states that although she is willing to consult with a DNA expert if the Court determines that it is necessary, she has attempted to explain the DNA issue to Petitioner, and she has attempted to explain why she did not include Petitioner's suggestions of presenting additional

---

[3] Other than his conclusory allegation that Ms. McDermott and Mr. Reiter are currently working together on numerous capital cases, Petitioner has not offered any evidence or citations to any cases where they have litigated cases together in a law firm type relationship or as co-counsel.

information concerning unreliability of the analysis, results and testimony. Report at 5, 7.

Although not a model of clarity, Petitioner has filed his Proffer of Substantive Constitutional Claims Subject to Review under Martinez v. Ryan (Proffer) (Doc. 26). He suggests that Ms. McDermott's representation has been deficient in the following respects: (1) she failed to argue Michael Reiter was ineffective under <u>Martinez</u> for failure to retain a qualified DNA expert in the state post conviction proceedings to establish that trial counsel rendered ineffective assistance by failing to subject the state's DNA evidence to fair and meaningful adversarial testing; (2) she failed to independently retain a qualified DNA expert and proffer evidence which would establish that Dr. Pollock's trial testimony of finding a DNA match amounted to a manipulation of the evidence which misled the jury; (3) she failed to argue Michael Reiter was ineffective under <u>Martinez</u> for failure to develop and present a claim that the state knowingly presented contradictory theories at Petitioner's and his co-defendant's capital trials, suggesting they were both guilty based on the same evidence; and, (4) she failed to argue Michael Reiter was ineffective under <u>Martinez</u> for failure to raise the claim concerning the prosecutor's improper closing argument undermining the presumption of innocence. Proffer at 8-9, 12-17, 17-19, 19-20.

**Law and Conclusions**

In his Motion for Appointment of Counsel, Petitioner is effectively seeking the substitution of counsel. Petitioner may move to substitute his court-appointed counsel, Ms. McDermott, pursuant to 18 U.S.C. § 3599(e). The Supreme Court explained, in Christeson v. Roper, 135 S.Ct. 891, 893-94 (2015) (per curiam):

> Title 18 U.S.C. § 3599 "entitles indigent defendants to the appointment of counsel in capital cases, including habeas corpus proceedings." Martel v. Clair, 565 U.S., at ----, 132 S.Ct., at 1280. "By providing indigent capital defendants with a mandatory right to qualified legal counsel in these proceedings, Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty." McFarland v. Scott, 512 U.S. 849, 859, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994). Congress has not, however, conferred capital habeas petitioners with the right to counsel of their choice. Instead, the statute leaves it to the court to select a properly qualified attorney. See §§ 3599(a)-(d). But the statute contemplates that a court may "replace" appointed counsel with "similarly qualified counsel ... upon motion" of the petitioner. § 3599(e).

The consideration of Petitioner's motion for substitution of counsel is governed by the "interests of justice" standard set forth in Martel v. Clair, 132 S.Ct. 1276, 1287 (2012). It "contemplates a peculiarly context-specific inquiry." Id. A variety of factors may be considered by a reviewing court, including: "the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the

10

asserted cause for the complaint, including the extent of the conflict or breakdown in communication between lawyer and client." Brown v. United States, 720 F.3d 1316, 1336 (11th Cir. 2013) (quotation and citation omitted), cert. denied, 135 S.Ct. 48 (2014). Of import, it is also recognized that requests made after years of litigation or on the eve of the ruling on a dispositive matter may be denied, particularly when the court is "putting the finishing touches" on its ruling. Id. (citation omitted).

This Court cannot resolve Petitioner's request "without probing why [Petitioner] wants a new lawyer." Martel v. Clair, 132 S.Ct. at 1288. Petitioner's first assertion of conflict is unfounded and has no merit. Ms. McDermott is not "registry counsel." The Court appointed her as counsel for Petitioner under the applicable provision, 18 U.S.C. § 3599. The Court admitted her to the CJA panel *pro hac vice*. As noted in her Report, she may, at the discretion of the district court, appear on behalf of Petitioner in state court clemency and competency proceedings. Gore, 720 F.3d at 814 n.1. She may seek to represent Petitioner before the state courts, as necessary, to exhaust a claim. At a later date, if Petitioner is under an active death warrant and attempts to raise an intellectual-disability claim, there is no prohibition against her representing him in that action. See Atkins v. Virginia, 536 U.S. 304 (2002). Also, there is nothing

prohibiting Ms. McDermott from representing Petitioner in a 42 U.S.C. § 1983 action to gain access to DNA testing.

Petitioner's second assertion of conflict does not win the day either. In the past, Ms. McDermott had a working relationship with Mr. Reiter as both were former employees of CCR, and for a period of just over two years, she was employed at his discretion. Most significantly, however, Ms. McDermott has not been employed with CCR since July, 2003. The Petition was filed in 2012, and Petitioner did not raise the assertion of divided loyalty until May, 2015. Although Petitioner summarily contends that Ms. McDermott and Mr. Reiter are currently working together on numerous capital cases in a law firm type of relationship, there is nothing before the Court which substantiates this claim. Instead, Ms. McDermott notes that their professional relationship for the past twelve years has been limited to a few phone calls related to litigation questions and fee issues, nothing more.

Of greater significance to this Court is the representation that has been provided by Ms. McDermott. Four extensive grounds are raised in the Petition. Half of the grounds concern DNA. Petition at 31-66; Memorandum at 7-34. Also of import, there is no evidence of divided loyalty caused by a personal and/or professional relationship with Mr. Reiter. For example, Ms. McDermott, in ground three of the Petition, does rely on <u>Martinez v. Ryan</u>, and asserts that Mr. Reiter, as initial-review collateral

counsel, provided inadequate assistance establishing cause for a procedural default of a claim. Memorandum at 38-43. Thus, she has not shied away from contending that initial-review collateral counsel improvidently, without explanation, withdrew a substantial claim, allegedly to the detriment of Petitioner and his efforts to obtain post conviction relief. Id. at 38.

The Court stayed the case in order to give Ms. McDermott and Petitioner an opportunity to confer and report. This opportunity was not wasted. Reviewing both Ms. McDermott's Report and Petitioner's Response, there has not been a breakdown in communication between lawyer and client. Ms. McDermott conferred with Petitioner telephonically and in person. She has informed the Court that she reviewed the grounds, attempted to explain the DNA issue to Petitioner and why she believes the DNA issue is adequately presented in grounds one and two of the Petition and already includes the information Petitioner believes is necessary to establish his claims, and made considered efforts to explain her rationale for not adopting Petitioner's suggestions.

Therefore, in this instance, CJA counsel has reviewed the grounds, carefully reflected on the grounds raised in the Petition, heard and considered Petitioner's suggestions, and has decided that the grounds she presented in the Petition adequately cover the important issues and are the strong, viable arguments to be

considered by this Court. As the Eleventh Circuit succinctly explained:

> "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983). "[A] per se rule that ... the professional advocate, [is not] allowed to decide what issues are to be pressed ... seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation." Id. at 751, 103 S.Ct. at 3313.

Hittson v. GDCP Warden, 759 F.3d 1210, 1263 (11th Cir. 2014) (footnote omitted), cert. denied, 135 S.Ct. 2126 (2015).

This Court recently said, "Ms. McDermott is an experienced death penalty lawyer who has successfully represented a number of death row inmates over the years." McCoy v. Sec'y, Fla. Dep't of Corr., No. 3:13-cv-706-J-32JRK, 2015 WL 3465780, at *2 (M.D. Fla. June 1, 2015), appeal filed, (11th Cir. July 13, 2015) (No. 15-13084). In the instant case, Ms. McDermott, a very experienced advocate, has winnowed out the weaker arguments and, in her professional evaluation, has decided what issues should be presented. See Brown, 720 F.3d at 1335 (noting that an attorney is not required to raise every colorable or non-frivolous claim suggested by a client).

At most, Petitioner is dissatisfied with counsel for not amending his habeas petition to include every claim he wants her to

14

raise. As noted previously, Ms. McDermott has assessed the DNA issue and believes that it has been sufficiently and appropriately raised in grounds one and two of the pending Petition. As for the other non-DNA proposed grounds, even if the claims had merit, "substitute counsel could not amend his habeas petition to include new claims anyway, unless they 'arose from the same core facts as the timely filed claims.'" McCoy, 2015 WL 3465780, at *4 (quoting Mayle v. Felix, 545 U.S. 644, 657 (2005)). Petitioner has not shown, and upon review, the newly proposed non-DNA claims do not "arise from a specific set of facts in common with the claims in Petitioner's timely-filed habeas petition." McCoy, 2015 WL 3465780, at *4 (footnote omitted). As such, they would not relate back. Therefore, substituting newly appointed counsel in an attempt to file an untimely amended habeas petition "would be an exercise in futility." Id. See Chavez v. Sec'y, Fla. Dep't of Corr., 742 F.3d 940, 946-47 (11th Cir. 2014) ("Because Chavez cannot bring any Martinez-based claims within the one-year statute of limitations for seeking federal habeas relief, and because binding precedent forecloses any argument that Martinez can excuse or equitably toll that limitations period, the appointment of counsel to investigate and pursue such claims would be a wholly futile gesture that renders § 3599's right to federally-funded counsel unavailable.").

Finally, the delay in seeking substitution is significant. Ms. McDermott filed the Petition on April 20, 2012. The state filed its response on August 1, 2012. Ms. McDermott filed the reply on October 30, 2012. The Court spent significant time and judicial resources reviewing the fully-briefed case and undertook the demanding review of the extensive state court record. At the point of full consideration of the merits of the Petition, on May 5, 2015, pursuant to the mailbox rule, Petitioner filed his pro se Motion for Appointment of Counsel. In his motion, he first suggested that there was a conflict resulting in counsel's divided loyalties, and requested the discharge of Ms. McDermott and sought the appointment of Billy Nolas and Terri Backus. Although the delay factor alone may not be abusive under these circumstances, the significant delay in raising the matter, combined with the rest of the factors for denying Petitioner's request for the substitution of counsel, certainly convince the Court that Petitioner is not entitled to the appointment of substitute counsel. See Christeson, 135 S.Ct. at 895 (noting delay in seeking substitution may constitute a factor).

The Court has fully and thoroughly considered Petitioner's Motion for Appointment of Counsel and concludes that it is due to be denied. The Court observes that Ms. McDermott is highly experienced capital counsel. She is open to communicating with her client. Nothing before the Court evinces any divided loyalty on

16

her part. She successfully filed a timely and substantial habeas Petition on behalf of Petitioner, including the DNA issue. Upon Petitioner's request, she reviewed the grounds raised in the Petition, considered his suggestions, and evaluated his suggestions. Although she found his suggestions wanting, she was not acting out some sort of divided loyalty, but rather as a professional advocate for her client.

At this juncture, it would not be beneficial to appoint substitute counsel. Ms. McDermott is familiar with the record and the case. She has evaluated Petitioner's suggestions and rejected them. It would be unlikely that new counsel could raise any new claims at this juncture as they would be untimely and would not relate back to the Petition. On the record before the Court, the substitution of counsel would not be in the interests of justice. Therefore, the Motion for Appointment of Counsel will be denied.

Accordingly, it is now

**ORDERED:**

1. Petitioner's pro se Motion for Appointment of Conflict-Free Collateral Counsel (Doc. 21) is **DENIED**.

2. Respondents' Motion to Lift Stay (Doc. 23) is **GRANTED**; however, the Court will reinstitute a stay based on a different ground.

3. The United States Supreme Court granted a petition for writ of certiorari in Hurst v. Florida, No. 14-7505, 135 S.Ct. 1531

(2015). Because the resolution of the issue in <u>Hurst</u> will directly impact the present case, this Court orders: That this case is **stayed** pending the outcome of the United States Supreme Court's consideration of the <u>Hurst</u> case and any subsequent related consideration of this case by the Florida courts. The case shall remain **administratively closed**. Petitioner shall file a motion to reopen this case within **thirty (30) days** of the date of the <u>final</u> decision in the <u>Hurst</u> case with respect to the issue of whether Florida's death sentencing scheme violates the Sixth Amendment or Eighth Amendment.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of August, 2015.

_____
UNITED STATES DISTRICT JUDGE

sa 8/12
c:
Steven Richard Taylor
Linda McDermott, Esquire
Stephen Richard White, Esquire